# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1239 |

| | |
|---|---|
| COMPLETE TITLE: | Applegate-Bader Farm, LLC,<br>        Plaintiff-Respondent-Cross-Appellant-Petitioner,<br>     v.<br>Wisconsin Department of Revenue and Richard Chandler in his capacity as Secretary of the Department of Revenue,<br>        Defendants-Appellants-Cross-Respondents. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 390 Wis. 2d 708,940 N.W.2d 725
PDC No:2020 WI App 7 - Published

| | |
|---|---|
| OPINION FILED: | March 16, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 9, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Green |
| JUDGE: | Thomas J. Vale |

JUSTICES:

ROGGENSACK, C.J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, REBECCA GRASSL BRADLEY, DALLET, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a dissenting opinion.

NOT PARTICIPATING:

ZIEGLER, J., did not participate.

ATTORNEYS:

For the plaintiff-respondent-cross-appellant-petitioner, there were briefs filed by *Ryan L. Woody*, *Catherine Dowie,* and *Matthiesen, Wickert & Lehrer, S.C.*, Hartford. There was an oral argument by *Ryan L. Woody*.

For the defendants-appellants-cross-respondents, there was a brief filed by *Anthony D. Russomanno*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Anthony D. Russomanno*.

An amicus curiae brief was filed on behalf of *Midwest Environmental Advocates*, Madison, by *Adam Voskuil*, and *Clean Wisconsin*, Madison, by *Evan Feinauer*.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2018AP1239
(L.C. No. 2016CV48)

STATE OF WISCONSIN       :      IN SUPREME COURT

**Applegate-Bader Farm, LLC,**

      **Plaintiff-Respondent-Cross-Appellant-Petitioner,**

   **v.**

**Wisconsin Department of Revenue and Richard Chandler in his capacity as Secretary of the Department of Revenue,**

      **Defendants-Appellants-Cross-Respondents.**

**FILED**

**MAR 16, 2021**

Sheila T. Reiff
Clerk of Supreme Court

---

ROGGENSACK, C.J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, REBECCA GRASSL BRADLEY, DALLET, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a dissenting opinion.

ZIEGLER, J., did not participate.

---

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 PATIENCE DRAKE ROGGENSACK, C.J. We review a decision of the court appeals[1] that affirmed the circuit court's[2] grant of

---

[1] Applegate-Bader Farm, LLC v. DOR, 2020 WI App 7, 390 Wis. 2d 708, 940 N.W.2d 725.

[2] The Honorable Thomas J. Vale of Green County presided.

summary judgment to the Department of Revenue (the Department) against Applegate-Bader Farm, LLC (Applegate). As it relates to this appeal, the circuit court and the court of appeals determined that Applegate did not raise a claim that triggered judicial review of the Department's decision not to prepare an Environmental Impact Statement (EIS) under the Wisconsin Environmental Policy Act (WEPA) when it promulgated the administrative rule set out in Wis. Admin. Code § Tax 18.05(1)(d) (2015-16) ("the rule").[3]

¶2 The circuit court held that Applegate had not made a threshold showing that there was an environmental injury. The court of appeals affirmed and held that Applegate had not raised a bona fide claim because it alleged only indirect environmental effects.

¶3 We conclude that administrative agencies must consider indirect, as well as direct, environmental effects of their proposed rules when deciding whether to prepare an EIS. Therefore, Applegate met its threshold burden even though it alleged only indirect environmental effects of the rule. On review of the Department's decision not to prepare an EIS, we conclude that the Department failed to develop a reviewable record that demonstrates that it made a preliminary investigation and reached a reasonable conclusion about the environmental consequences of its action. Therefore, the

---

[3] All subsequent references to the Wisconsin Administrative Code are to the 2015-16 version unless otherwise indicated.

2

Department failed to comply with WEPA. Accordingly, we reverse the court of appeals' decision that concludes to the contrary. We remand the WEPA claim to the circuit court with instructions to remand the WEPA matter to the Department for further actions consistent with this decision. Additionally, we stay the enforcement of Wis. Admin. Code § Tax 18.05(1)(d).

## I. BACKGROUND

¶4 Applegate operates a farm in southern Wisconsin on approximately 11,000 acres of land. Roughly 2,000 of those acres are enrolled in a federal Wetland Reserve Easement ("easement") through the Agricultural Conservation Easement Program. Applegate's easement is permanent, and therefore it is unable to use the land subject to the easement for agricultural purposes. This action arises out of a 2015 revision of Wis. Admin. Code § Tax 18.05(1)(d) and the effect that that revision had on landowners with certain conservation easements.

### A. Wisconsin Admin. Code § Tax 18.05(1)(d)

¶5 The Wisconsin Constitution provides that land must be taxed uniformly. Wis. Const. art VIII, § 1. Generally, this requires that real property is taxed according to its fair market value. Wis. Stat. § 70.32(1) (2019-20).[4] However, "[t]axation of agricultural land and undeveloped land, both as defined by law, need not be uniform with the taxation of each other nor with the taxation of other real property." Wis.

_____

[4] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

Const. art. VIII, § 1. Accordingly, agricultural land is assessed "according to the income that could be generated from its rental for agricultural use." Wis. Stat. § 70.32(2r). This is generally referred to as the land's "use value." Non-agricultural, undeveloped land is assessed at "50 percent of its full value, as determined under [§ 70.32](1)." § 70.32(4).

¶6 Pursuant to Wis. Stat. § 70.32(2)(c)1i., "agricultural use" is "defined by the department of revenue by rule and includes the growing of short rotation woody crops, including poplars and willows, using agronomic practices." The Department defines agricultural use in Wis. Admin. Code § Tax 18.05(1). As it relates to this appeal, paragraph (d) states as follows:

> (d) Land without improvements subject to a federal or state easement or enrolled in a federal or state program if all of the following apply:
>
> 1. The land was in agricultural use under par. (a), (b), or (c) when it was entered into the qualifying easement or program, and
>
> 2. Qualifying easements and programs shall adhere to standards and practices provided under the January 31, 2014 No. 697 version of s. ATCP 50.04, 50.06, 50.71, 50.72, 50.83, 50.88, 50.91, 50.96, or 50.98. The Wisconsin Property Assessment Manual, authorized under [Wis. Stat. §] 73.03(2a), shall list the qualifying easements and programs according to the ATCP provisions, and
>
> 3. a. The terms of the temporary easement or program do not restrict the return of the land to agricultural use under par. (a), (b), or (c) after the easement or program is satisfactorily completed, or
>
> b. The terms of the easement, contract, compatible use agreement, or conservation plan for that specific parcel authorized an agricultural use,

4

as defined in par. (a), (b), or (c), for that parcel
in the prior year.

Wis. Admin. Code § Tax 18.05(1)(d). The Department adopted this version of the rule in 2015.

¶7 Prior to the above quoted definition, the Department listed easements by name that qualified for agricultural use taxation. See Wis. Admin. Code § Tax 18.05(e) (1997). Several of the previously named state and federal easement programs are no longer in existence. Accordingly, the Department first revised the agricultural use rule in 2000. See Wis. Admin. Code § Tax 18.05(1)(d) and (e) (2000). And, in 2013, the Department undertook revising the rule again. According to the Department's 2013 statement of scope:

> The proposed rule will address changes in the listed programs that have occurred since the rule was enacted and will also identify general criteria for determining what land that is in federal and state pollution control and soil erosion programs qualifies for agricultural use under the subchapter. This will provide consistency and clear standards for property owners and assessors.

691B Wis. Admin. Reg. SS 084-13 (July 31, 2013).

¶8 A draft of the 2013 rule included temporary and permanent easements at both the state and federal level. 696B Wis. Admin. Reg. CR 13-102 (Paragraph (e) explained agricultural use as follows: "Commencing with the January 1, 2015 assessment, land without improvements subject to a permanent federal or state easement or enrolled in a permanent federal or state program if that land was in agricultural use under par. (a), (b), or (c) when it was entered into the

5

easement or program."). During the comment period, the Department received feedback from several entities, Applegate included. Some entities, including Applegate, supported the broader definition that the proposed rule provided. However, some entities opposed that broad definition; they argued that those who permanently removed their lands from agricultural use should not be permitted to take advantage of that agricultural use definition.

¶9 The final rule appears to permit permanent state or federal easement holders to claim agricultural use for taxation only when the terms of an easement "authorized an agricultural use, as defined in par. (a), (b), or (c), for that parcel in the prior year." Wis. Admin. Code § Tax 18.05(1)(d)3.b.

### B. This Litigation

¶10 In 2016, and after the Department issued the final version of the rule, Applegate initiated this lawsuit. Applegate's amended complaint raised nine claims for relief, two of which were subject to appeal and one of which, the WEPA claim, is now before us in this case.[5]

¶11 As it relates to Applegate's WEPA claim, Applegate alleged the following:

> 206. The final rule order excluded wetlands covered by the ACEP and WRE and completely removed agricultural use value assessment from wetlands enrolled in the Stream Bank Protection program under [Wis. Stat. § 23.094]; the Conservation Reserve

---

[5] The outstanding claims for relief remain pending in the circuit court.

6

Enhancement program under [Wis. Stat. § 93.70], and the Non-point Source Water Pollution Abatement program under [Wis. Stat. § 281.65].

207. The Department ignored and/or failed to consider evidence in its possession from the Department of Natural Resources that the exclusion and removal of wetlands in agricultural conservation easements from Tax 18.05(1)'s definition of "agricultural use" causes farmers to destroy sensitive wetlands by placing cows within the wetlands to achieve use value assessment.

208. The Department further ignored and/or failed to consider evidence in its possession from the [Department of] Natural Resources that the exclusion of WRP/WRE easements from Tax 18.05(1) is causing property owners to not enroll their wetlands into the federal program.

209. The removal and exclusion of wetlands conserved in agricultural easements from agricultural use value will result in the further destruction, degradation and loss of wetlands in this State.

210. The exclusion and removal of wetlands conserved in agricultural easements from agricultural use value has and will continue to have a significant effect upon the environment, thus, necessitating compliance with WEPA, Wis. Stat. [§] 1.11.

. . . .

212. WEPA is procedural in nature and does not control agency decision making. Rather, it requires that agencies consider and evaluate the environmental consequences of alternatives available to them and undertake that consideration in the framework provided by [Wis. Stat. §] 1.11.

. . . .

215. The Defendants failed to fulfill their independent duties under WEPA, Wis. Stat. § 1.11, to evaluate the environmental impact of excluding permanent conservation easements from Tax 18.05(1)(d) and failed to consider [the] full range of reasonable alternatives to minimize adverse social, economic and

7

environmental impacts to the Plaintiff, state taxpayers, the effect on the State's wetlands and associated wildlife.

216. The final decisions (and non-decisions) of the Defendants relative to the passage of Tax 18.05(1)(d) were arbitrary, capricious, erroneous and contrary to law under WEPA, Wis. Stat. § 1.11, and as a result the Rule is void ab initio and must be set aside or remanded with directions.

¶12 The parties filed cross motions for summary judgment. The circuit court granted Applegate's motion for summary judgment on the Wis. Stat. ch. 227 claim concluding that the Department "failed to follow proper rulemaking procedures." The court granted the Department's motion for summary judgment on the WEPA claim, holding that Applegate failed to allege facts that supported its claim of environmental effect of the rule. Based on its decision that the Department violated rulemaking procedures of ch. 227, the circuit court vacated the rule. However, the court stayed its judgment pending appeal.

¶13 Both parties appealed the circuit court's summary judgment decisions against them, and the court of appeals ruled in favor of the Department on both claims. As it relates to Applegate's cross-appeal, the court of appeals affirmed the circuit court's decision against Applegate. The court of appeals read our decision in Wisconsin's Environmental Decade, Inc. v. DNR, 115 Wis. 2d 381, 340 N.W.2d 722 (1983) (WED IV) to obviate the need for an EIS for indirect environmental effects. Applegate-Bader Farm, LLC v. DOR, 2020 WI App 7, ¶86, 390 Wis. 2d 708. Because Applegate's claims of environmental harm were all indirect, the court held that it had not raised a bona

8

fide WEPA claim. Id., ¶93. The court of appeals remanded the case to the circuit court to consider the remaining claims for relief. Id., ¶96.

¶14 Applegate filed a petition for review seeking review of only the WEPA claim, and we granted review. As explained below, we conclude that agencies are required to consider indirect environmental effects when determining whether to prepare an EIS. We also conclude that the Department did not satisfy its WEPA requirements because it did not base its decision not to prepare an EIS (the negative-EIS decision) on a reviewable record as is required in Wisconsin's Environmental Decade, Inc. v. Public Service Commission, 79 Wis. 2d 409, 256 N.W.2d 149 (1977) (WED III).

## II. DISCUSSION

### A. Standard of Review

¶15 This case is before us on appeal of a grant of summary judgment to the Department. We independently review decisions granting summary judgment. Sands v. Menard, 2017 WI 110, ¶28, 379 Wis. 2d 1, 904 N.W.2d 789. In so doing, we apply the same methodology employed by the circuit court, while benefitting from its discussion and that of the court of appeals. Id. Summary judgment is appropriate where there is no genuine issue of material fact and the decision turns on a question of law. Wis. Stat. § 802.08(2).

B.  The Negative-EIS Decision

¶16  When we review a challenge to an agency's negative-EIS decision,[6] our review is a two-step inquiry that tests the reasonableness of the agency's decision:

> First, has the agency developed a reviewable record reflecting a preliminary factual investigation covering the relevant areas of environmental concern in sufficient depth to permit a reasonably informed preliminary judgment of the environmental consequences of the action proposed; second, giving due regard to the agency's expertise where it appears actually to have been applied, does the agency's determination that the action is not a major action significantly affecting the quality of the human environment follow from the results of the agency's investigation in a manner consistent with the exercise of reasonable judgment by an agency committed to compliance with WEPA's obligations?

WED III, 79 Wis. 2d at 425.

¶17  If the Department developed a reviewable record and its negative-EIS decision is reasonable based on that record, we will uphold its decision.  However, before reaching whether the Department's decision was reviewable, we address the court of appeals' conclusion that Applegate failed to allege a bona fide WEPA claim because it alleged that the rule had only indirect

---

[6] Compare Wisconsin's Env't Decade, Inc. v. Pub. Serv. Comm'n, 79 Wis. 2d 409, 424, 256 N.W.2d 149 (1977) (WED III) (testing an agency's negative-EIS decision for whether there is a reviewable record and, whether based on that record the decision not to prepare an EIS is a reasonable exercise of its judgment) with Clean Wisconsin, Inc. v. Pub. Serv. Comm'n, 2005 WI 93, ¶190, 282 Wis. 2d 250, 700 N.W.2d 768 ("[I]t is not our role to evaluate the adequacy of the EIS; we instead evaluate whether the [agency's] determination that the EIS was adequate was reasonable.").

environmental effects. The court of appeals was incorrect. As we have consistently held, agencies must consider both direct and indirect environmental effects of their major actions to determine whether those effects will have a significant effect on the human environment. Accordingly, we conclude that Applegate met its threshold burden under WED III, and we therefore address the record underlying the Department's negative-EIS decision.[7]

---

[7] The Department makes the additional argument that Applegate lacks standing to challenge the Department's negative-EIS decision. A party has standing to challenge an administrative decision when "the decision of an agency directly causes injury to the interest of the petitioner" and if the "interest asserted is recognized by law." Fox v. DHS, 112 Wis. 2d 514, 524, 334 N.W.2d 532 (1983) (internal quotation marks omitted). An alleged injury may be sufficiently direct for the petitioner even when it is "remote in time or which will [occur only] as an end result of a sequence of events set in motion by the agency action challenged." Wisconsin's Env't Decade, Inc. v. Pub. Serv. Comm'n, 69 Wis. 2d 1, 14, 230 N.W.2d 243 (1975) (WED I). Such injuries "must show a direct causal relationship to a proposed change in the physical environment." Fox, 112 Wis. 2d at 528. "An allegation of injury in fact to . . . conservational and recreational interests has been readily accepted as sufficient to confer standing." WED I, 69 Wis. 2d at 10. However, a WEPA petitioner must "resid[e] in the area most likely to be affected by an agency action [to] have a legally protected interest in the quality of their environment." Fox, 112 Wis. 2d at 531.

"[S]tanding in Wisconsin should not be construed narrowly or restrictively." WED I, 69 Wis. 2d at 13. We conclude that Applegate has standing to challenge the Department's negative-EIS decision. Applegate has alleged an injury to its conservational interests based on a sequence of events caused by the Department including certain conservation easements and excluding others in the definition of agricultural use. If we accept these allegations as true, Applegate has an injury in fact to its legally protected conservational interest. See WED I, 69 Wis. 2d at 17 (taking the alleged facts as true to

11

### 1.  Indirect Environmental Effects

¶18  "The purpose of WEPA is to insure that agencies consider environmental impacts during decision making."  State ex rel. Boehm v. DNR, 174 Wis. 2d 657, 665, 497 N.W.2d 445 (1993).  In turn, "[t]he purpose of the EIS is to enable agencies to take a 'hard look' at the environmental consequences of a proposed action."  Clean Wisconsin v. Pub. Serv. Comm'n, 2005 WI 93, ¶189, 282 Wis. 2d 250, 700 N.W.2d 768.  Accordingly, WEPA, which is set out in Wis. Stat. § 1.11, "constitutes a clear legislative declaration that protection of the environment is among the 'essential considerations of state policy,' and as such, is an essential part of the mandate of every state agency."  WED III, 79 Wis. 2d at 416.  WEPA directs that "to the fullest extent possible," agencies shall include a "detailed statement" for all "major actions significantly impacting the human environment."  §§ 1.11(1) and (2)(c).[8]  Significant effects

---

determine whether Wisconsin's Environmental Decade had standing).

[8] Wisconsin Stat. § 1.11(2)(c) provides in full:

[All agencies of the state shall:]

(c) Include in every recommendation or report on proposals for legislation and other major actions significantly affecting the quality of the human environment, a detailed statement, substantially following the guidelines issued by the Unites States council on environmental quality under P.L. 91-190, 42 USC 4331, by the responsible official on:

1. The environmental impact of the proposed action;

may include both negative effects and beneficial effects of a proposed action.  See § 1.11(2)(c)6.; see also WED III, 79 Wis. 2d at 429 n.17 (quoting 40 C.F.R. § 1500.6).

¶19 To comply with WEPA's directive, agencies must consider direct and indirect environmental effects when determining whether to prepare an EIS.  We explicitly so concluded in WED III.  There, we "reject[ed] any intimation . . . that because the environmental effects . . . are 'indirect' they need not be considered under WEPA.  There is nothing in the Act to suggest that only direct environmental consequences need be considered." Id. at 428.  In so concluding, we reasoned that a construction that limited the Act to direct environmental effects would be contrary to the statute's plain meaning.  Id. at 430.

¶20 As WEPA is based principally on the National Environmental Policy Act (NEPA), we may look to federal law in

_____

2. Any adverse environmental effects which cannot be avoided should the proposal be implemented;

3. Alternatives to the proposed action;

4. The relationship between local short-term uses of the human environment and the maintenance and enhancement of long-term productivity;

5. Any irreversible and irretrievable commitments of resources that would be involved in the proposed action should it be implemented; and

6. Such statement shall also contain details of the beneficial aspects of the proposed project, both short term and long term, and the economic advantages and disadvantages of the proposal.

our quest to interpret WEPA's requirements. See id. at 419-24. Under NEPA, "effects" include both direct and indirect effects, and indirect effects are defined as those that "are caused by the action and are later in time or farther removed in distance, but are still reasonably foreseeable." 40 C.F.R. § 1508.8(b) (2021). Especially pertinent to this case, "[i]ndirect effects may include growth inducing effects and other effects related to induced changes in the pattern of land use, population density or growth rate, and related effects on air and water and other natural systems, including ecosystems." § 1508.8(b). Similarly, federal courts have long held that federal agencies must consider both direct and indirect environmental effects of major agency actions when determining whether to prepare an EIS. See, e.g., Sierra Club v. Marsh, 769 F.2d 868, 878 (1st Cir. 1985) (stating that agencies must consider indirect "secondary impacts").[9]

---

[9] See also Colorado Env't Coal. v. Dombeck, 185 F.3d 1162, 1176 (10th Cir. 1999) (citing the former regulation, which mandated an examination of indirect effects); Friends of Boundary Waters Wilderness v. Dombeck, 164 F.3d 1115, 1128 (8th Cir. 1999) (explaining that NEPA requires a detailed statement "from which a court can determine whether the agency has made a good faith effort to consider the values NEPA seeks to protect"); Nat. Res. Defense Council, Inc. v. F.A.A., 564 F.3d 549, 558 (2d Cir. 2009) (stating that "[i]n determining the scope of an EIS, the agency 'shall consider . . . 3 types of impacts': direct, indirect, and cumulative."); Citizens for Smart Growth v. Sec'y of Dep't of Transp., 669 F.3d 1203, 1214 (11th Cir. 2012) (discussing the indirect effects of state action on wetlands).

¶21 Despite what we thought was clear direction, the court of appeals read part of our decision in WED IV, 115 Wis. 2d 381, as requiring a WEPA petitioner, such as Applegate, to allege that an agency action must have direct environmental effects in order to raise a bona fide WEPA claim. Applegate, 390 Wis. 2d 708, ¶86. Specifically, the court of appeals concluded that "Applying WED [IV] here, it is clear that [Applegate's] theory of indirect effects of [Wis. Admin. Code] § Tax 18.05(1)(d) on how farmers use easement program lands cannot, on its own, give rise to a bona fide claim under WEPA." Id. The court of appeals misread WED IV.

¶22 In WED IV, the issue we were tasked with deciding was "whether the DNR has an obligation to [prepare] an EIS for a project when investigation, research and public hearing reveal that the project will have minor impacts on the environment, but will have possible socioeconomic impacts." WED IV, 115 Wis. 2d at 395. With that context, our statement on "indirect secondary effects" becomes more clear.

¶23 We were not referring to indirect environmental effects, but rather, we were referring to indirect, non-environmental effects. Namely, we were determining whether the socioeconomic effects surrounding the DNR's issuance of certain permits that facilitated the development of a mall necessitated an EIS when there were only minor, insignificant environmental effects. We held that, alone, the alleged non-environmental effects of the project did not necessitate an EIS. However, that holding does not undermine the principle that indirect

15

environmental effects may on their own become "significant" and necessitate an EIS. See id. at 415 (Bablitch, J., dissenting) (agreeing with the majority "that in making its determination, the DNR must review the direct and indirect environmental effects of the project" and reiterating that "[i]t is clear that all of the law surrounding WEPA requires that both direct and indirect effects on the physical environment must be considered . . . in an EIS decision").

¶24 We again consider federal regulations to aid in our explanation. Similar to Wis. Stat. § 1.11(2)(c), 40 C.F.R. § 1502.16 (2021) describes the required contents of an EIS. The first requirement is that the discussion shall include "[t]he environmental impacts of the proposed action and reasonable alternatives to the proposed action and the significance of those impacts." 40 C.F.R. § 1502.16(a)(1). Notably, the federal regulations do not prioritize between direct and indirect environmental effects. Subsection (b) relates to indirect (non-environmental) effects. It states:

> Economic or social effects by themselves do not require preparation of an environmental impact statement. However, when the agency determines that economic or social and natural or physical environmental effects are interrelated, the environmental impact statement shall discuss and give appropriate consideration to these effects on the human environment.

40 C.F.R. § 1502.16(b). Subsection (b) is consistent with what we stated in WED IV. Again, at issue there was whether the DNR erred as a matter of law in not preparing an EIS despite a

16

showing of indirect, non-environmental effects coupled with minor, insignificant, environmental effects. Id. at 395. The effects in WED IV were socioeconomic in nature. Id. The DNR determined that the environmental effects were not significant, and therefore, no EIS was necessary; the non-environmental effects alone could not have changed that determination.

¶25 Read in context, our statement in WED IV does not change the requirement of all state agencies to consider direct and indirect environmental effects of their major actions. Further, our statement in WED IV does not create a threshold requirement that WEPA petitioners must allege direct environmental effects to trigger judicial WEPA review. Petitioners may, as Applegate did, argue that an agency abdicated its WEPA obligations by failing to consider indirect environmental effects in its negative-EIS decision.

¶26 Before reaching our conclusion on the foundation for this departmental decision, we determine whether Applegate has alleged facts "constituting a bona fide challenge." See WED III, 79 Wis. 2d at 424. "[A]llegations of environmental effect which are patently trivial or frivolous [should not] subject the agency decision to searching judicial review." Id. It is true that "there may be cases where it will be obvious to agency and court alike on the basis of facts that no EIS need be prepared." Id. However, we are not persuaded that this is a case where it is "obvious" that an EIS was not necessary. Rather, we conclude that Applegate has alleged "issues of arguably significant

17

environmental import" and therefore, "the agency must show justification for its negative-EIS decision." Id.

¶27 In its complaint, Applegate alleged several environmental effects of the new rule. See ¶11, supra. For example, Applegate alleged that "the exclusion and removal of wetlands in agricultural conservation easements from [Wis. Admin. Code §] Tax 18.05(1)'s definition of 'agricultural use' causes farmers to destroy sensitive wetlands by placing cows within the wetlands to achieve use value assessment." Applegate further alleged that "the exclusion of the WRP/WRE easements from Tax 18.05(1) is causing property owners not to enroll their wetlands into the federal program," which in turn "will result in the further destruction, degradation and loss of wetlands in this State."

¶28 We conclude that Applegate's allegations describe reasonably foreseeable consequences of the rule classifying lands in a certain manner.[10] Accordingly, Applegate has alleged facts constituting a bona fide claim to trigger the Department's actions under WEPA.

2. Reviewable Record

---

[10] Once again, the federal guidelines cited above are informative. Lest there be any doubt, we conclude that indirect environmental effects such as "effects related to induced changes in the pattern of land use, population density or growth rate, and related effects on air and water and other natural systems, including ecosystems" may be of a significant nature to trigger a WEPA analysis. 40 C.F.R. § 1508.8(b). Therefore, petitioners may allege such effects when challenging a negative-EIS decision.

¶29 Having confirmed that indirect environmental effects are to be considered in deciding whether to prepare an EIS and that Applegate has made sufficient allegations to constitute a bona fide WEPA challenge, we now consider the two-step review that we apply to negative-EIS decisions. Once again, the steps are: (1) whether the agency has developed a reviewable record, and (2) whether the record reveals that the agency's determination not to prepare an EIS was reasonable. We conclude that, for the reasons discussed below, the Department failed the first step of this analysis. It did not develop a record from which we may conclude that its negative-EIS decision was reasonable.

¶30 For a negative-EIS decision, an agency must "develop[] a reviewable record reflecting a preliminary factual investigation covering the relevant areas of environmental concern in sufficient depth to permit a reasonably informed preliminary judgment of the environmental consequences of the action proposed." WED III, 79 Wis. 2d at 425. Although an agency's record "need not follow any particular form," the record that is produced "must reveal in a form susceptible of meaningful evaluation by a court the nature and results of the agency's investigation and the reasoning and basis of its conclusion." Id. at 425 n.15. We agree with the Department that in some circumstances the rulemaking record may be sufficient to complete the first step of the test. See City of New Richmond v. DNR, 145 Wis. 2d 535, 547-48, 428 N.W.2d 279

(Ct. App. 1988). However, in order for an administrative record to be sufficient, it must satisfy WED III's requirements.

¶31 We have, on several occasions, concluded that an agency's record was satisfactory despite the record not having the specific information or investigation that the petitioner would have preferred. See WED IV, 115 Wis. 2d at 398-402; Larsen v. Munz Corp., 167 Wis. 2d 583, 605, 482 N.W.2d 332 (1992); Boehm, 174 Wis. 2d at 666-68. However, in each of those cases, the record revealed that the respective agency's decision was well reasoned and considered both the relevant environmental effects and the consequences of those effects. WED IV, 115 Wis. 2d at 398-402 (examining the record); Larsen, 167 Wis. 2d at 607 ("The procedure followed in this case resulted in a reviewable record . . . ."); Boehm, 174 Wis. 2d at 667 ("There was more than adequate documentation in the record reflecting a good faith investigation into each of the environmental concerns relevant to this project."). Such a record was not developed here.

¶32 The Department's rulemaking record spans just over 800 pages. The Department argues that this record is sufficient to permit judicial review of its negative-EIS decision. We disagree. Upon a review of the record we notice documents and information that would signal to an agency that its action may have environmental effects and that it may need to take a "hard look" at those potential effects.[11] See Clean Wisconsin, 282

---

[11] For example, the Department received comment and testimony regarding support for the Wetland Restoration Program

Wis. 2d 250, ¶189. However, what is not present within this administrative record is any agency discussion of the environmental effects of the rule. Nor is there any discussion, memoranda, e-mail, transcript or other documentation that explains the Department's rationale behind its negative-EIS decision. Without anything in the record that demonstrates the Department's reasoning for its negative-EIS decision, we are unable to conclude that the Department satisfied the first step of our required review.

¶33 The Department argues that we may infer that, based on its record, its negative-EIS decision was reasonable. The Department cites Larsen for its argument that its rulemaking record may reveal such implicit conclusions. See Larsen, 167 Wis. 2d at 600-01 ("The DOA's actions reveal an implicit determination that this lease/purchase technique was not a Type I action for which an EIS was required."). We are unpersuaded. The portion of our Larsen opinion that the Department cites is wholly inapposite to our decision today.

¶34 It is true that at issue in Larsen was the reasonableness of the Department of Administration's (DOA) negative-EIS decision. Larsen, 167 Wis. 2d at 598. However, we divided that issue into several sub-issues. Id. The first sub-

---

(WRP) (now Wetland Reserve Easements) being included in the agricultural use definition under the rule. Many of these comments centered on the environmental benefits of the WRP. These comments alone should have alerted the Department that it may need to consider the environmental effects of its rule, regardless of whether those effects be positive or negative.

issue was whether the DOA's determination that its action was not a "Type I" action was reasonable.  Id.  Under DOA rules, certain actions will always require an EIS (Type I), certain actions will never require an EIS (Type III), and some may or may not require an EIS (Type II).  Wis. Admin. Code § Adm 60.03. The DOA concluded that its action was not a Type I action, and therefore, it was not automatically required to conduct an EIS. Id. at 595.  Rather, the DOA determined that its action was a Type II action.  Id.  Accordingly, the DOA conducted an Environmental Assessment (EA) and subsequently determined that an EIS was not necessary.  Id.

¶35  Insofar as we held that an agency's rulemaking record may reveal implicit conclusions, we concluded that an explicit statement from the DOA that the action that the DOA undertook was not a "Type I" action would "exalt form over substance." Id. at 600-01.  We concluded that the DOA's record implicitly demonstrated that the action was not a Type I and that an EIS was not automatically required.  Id.  However, when we arrived at the third sub-issue, whether the DOA's negative-EIS decision was reasonable, we made no mention of implicit determinations. Instead, we stated:

> We conclude the process followed in the instant case sufficiently satisfied [WEPA] requirements.  The record reveals the agency decision in this case not to prepare an EIS for this project was informed and reasonable.  It was based on the [Preliminary Environmental Impact Assessment] and the subsequent EA.  We assume without deciding that the EA was adequate.  Once an agency has made its fully informed and well-considered decision, a reviewing court may

22

not interfere with agency discretion choosing the action to be taken, or as in this case, the decision not to prepare an EIS.

Id. at 606-07. It is clear that the record in Larsen, which included an EA, was satisfactory.

¶36 Larsen does not inform our decision here. We are not deciding whether an unprecedented agency action falls within certain environmental gatekeeping criteria that an agency has set for itself. We are therefore unpersuaded that we may simply infer that the Department's decision was "fully informed and well-considered." Additionally, even if an agency's record could reveal an implicit conclusion that a negative-EIS decision was reasonable, here, unlike Larsen, we do not have the benefit of an EA or any similar analysis in the record that reveals that the Department considered the magnitude of the environmental effects of the rule. Rather, other than the environmental issues raised by others, there is nothing in the record that demonstrates any agency consideration of those issues.

¶37 WEPA is a procedural statute. WED III, 79 Wis. 2d at 416. It is not intended to control agency decision making. Id. We continue to stand by that general understanding, and it may be the case that on remand that the Department may conclude that an EIS is unnecessary. However, we conclude that the record before us is insufficient to support the Department's negative-EIS decision.

### C. Remedy

¶38 Applegate brought this challenge as a declaratory judgment action under Wis. Stat. § 227.40. Section 227.40 is

23

ordinarily the "exclusive means of judicial review of the validity of a rule." § 227.40(1). However, because Applegate is challenging an agency's decision under WEPA, we are not confined to the declaratory judgment action requirements of § 227.40. Rather, we may review the Department's action under Wis. Stat. § 227.57. See Wisconsin's Env't Decade, Inc. v. PSC, 69 Wis. 2d 1, 230 N.W.2d 243 (1975) (WED I) (applying the standing principles of the predecessor statutes to Wis. Stat. §§ 227.52 and 227.53 to a WEPA challenge); see also Wisconsin's Env't Decade, Inc. v. PSC, 98 Wis. 2d 682, 298 N.W.2d 205 (Ct. App. 1980) (finding "little difference" between WED III's reasonableness standard of review and the predecessor statute to § 227.57 and reviewing the adequacy of an EIS under that statute).

¶39 Wisconsin Stat. § 227.57(2) commands that "[u]nless the court finds a ground for setting aide, modifying, remanding or ordering agency action or ancillary relief under a specified provision of this section, it shall affirm the agency's action." § 227.57(2). However, "[t]he court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is . . . in violation of a constitutional or statutory provision." § 227.57(8). Thereafter, a court may "make such interlocutory order as it finds necessary to preserve the interests of any party and the public pending further . . . agency action." § 227.57(9).

¶40 As discussed above, we have concluded that the Department failed to comply with WEPA's requirements in regard

24

to its negative-EIS decision.  Therefore, the Department has violated its obligation to follow the law.  Wis. Stat. § 227.57(8).  Accordingly, we remand to the circuit court with instruction to remand to the Department to determine whether an EIS is necessary and to develop a record from which a court could determine whether its decision is reasonable.  See Milwaukee Brewers Baseball Club v. DHSS, 130 Wis. 2d 56, 76, 387 N.W.2d 245 (1986) (remanding the cause to the circuit court to remand to the agency); see also WED III, 79 Wis. 2d at 442-43 (remanding the matter to the Public Service Commission). Additionally, we stay the enforcement of Wis. Admin. Code § Tax 18.05(1)(d) to preserve the interests of Applegate and the public pending further agency action.  § 227.57(9); see Milwaukee Brewers Baseball Club, 130 Wis. 2d at 76 (enjoining further construction of a prison pending the agency's completion of an adequate EIS).

## III.  CONCLUSION

¶41 We conclude that administrative agencies must consider indirect, as well as direct, environmental effects of their proposed rules when deciding whether to prepare an EIS. Therefore, Applegate met its threshold burden even though it alleged only indirect environmental effects of the rule.  On review of the Department's decision not to prepare an EIS, we conclude that the Department failed to develop a reviewable record that demonstrates that it made a preliminary investigation and reached a reasonable conclusion about the environmental consequences of its action.  Therefore, the

25

Department failed to comply with WEPA. Accordingly, we reverse the court of appeals' decision that concludes to the contrary. We remand the WEPA claim to the circuit court with instructions to remand the WEPA matter to the Department for further actions consistent with this decision. Additionally, we stay the enforcement of Wis. Admin. § Tax 18.05(1)(d) pending the Department's compliance with WEPA.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court with instructions.

¶42 ANNETTE KINGSLAND ZIEGLER, J., did not participate.

¶43 BRIAN HAGEDORN, J. *(dissenting).* The majority concludes administrative agencies must consider both direct and indirect environmental effects when deciding whether to prepare an Environmental Impact Statement (EIS) under the Wisconsin Environmental Protection Act (WEPA). Wis. Stat. § 1.11(2)(c) (2019-20).[1] I agree. I part ways with the majority, however, because Applegate-Bader Farm, LLC (Applegate) did not assert a bona fide challenge, and therefore the Department of Revenue (DOR) was not required to prepare an EIS.

¶44 To raise a bona fide challenge, Applegate must credibly allege that the rule change would significantly affect the environment's status quo prior to the change. Applegate's allegations do not come close to credibly alleging that the policy under the new rule as compared to the old rule would cause significant environmental impact. I respectfully dissent because I conclude that the rule amendment was not promulgated in violation of WEPA.

## I. ANALYSIS UNDER WEPA

¶45 Applegate's WEPA claim is rooted in a statutory procedural requirement imposed on agencies before they take certain actions that significantly affect the environment. Wisconsin Stat. § 1.11(2)(c) provides the statutory command relevant to this case. It requires that "[a]ll agencies of the state"

---

[1] All subsequent references to the Wisconsin Statutes are to the 2019-20 version.

1

> [i]nclude in every recommendation or report on proposals for legislation and other major actions significantly affecting the quality of the human environment, a detailed statement, substantially following the guidelines issued by the United States council on environmental quality . . . .

§ 1.11(2)(c). In this case, everyone agrees that promulgating the 2014 amendment to Wis. Admin. Code § Tax 18.05(1) (July 2018)[2] was a major action under this statute. The disagreement here is whether the rule amendment was one "significantly affecting the quality of the human environment." If the rule amendment met this standard, WEPA required the agency, as part of its rulemaking process, to prepare "a detailed statement" discussing the action's environmental impact, adverse effects, alternatives, commitment of resources, and benefits, among other factors. § 1.11(2)(c)1.-6.

¶46 But how is the judiciary to determine when an action might have a significant effect on the environment such that an EIS is required? State and federal courts analyzing this kind of language have understood this statutory call to leave significant room for agency discretion. To that end, this court adopted the following approach for so-called negative-EIS determinations:

> We are of the opinion that the test of reasonableness should be applied to review a negative threshold decision under WEPA. Complete de novo review would be akin to treating the entire question of significant environmental effect as one of law. Where a question of law is presented, the reviewing court of course will determine the question independently regardless

---

[2] All subsequent references to the Wisconsin Administrative Code ch. Tax 18 are to the July 2018 register date unless otherwise indicated.

2

of the standard by which the agency's overall decision is to be tested. However, the question whether there is present in a given case a major action significantly affecting the environment will in general be a matter of both law and fact. . . .

[Wis. Stat. § 1.11(2)(c)] contemplates the exercise of judgment by the agency, but that judgment must be reasonably exercised within the limits imposed by the Act.

Wisconsin's Env't Decade, Inc. v. PSC, 79 Wis. 2d 409, 423-24, 256 N.W.2d 149 (1977) (WED III) (citation omitted). This reasonableness standard has governed review of WEPA claims ever since.[3] E.g., Wisconsin's Env't Decade, Inc. v. DNR, 115 Wis. 2d 381, 391, 340 N.W.2d 722 (1983); Larsen v. Munz Corp., 167 Wis. 2d 583, 600, 482 N.W.2d 332 (1992).

¶47 Moving beyond the statutory command, we went further in WED III and mandated a process for the express purpose of enabling judicial review. Namely, an agency must create "a reviewable record reflecting a preliminary factual investigation covering the relevant areas of environmental concern." WED III, 79 Wis. 2d at 425 (footnote omitted). We then review that

---

[3] In the years since our adoption of the reasonableness standard of review for WEPA challenges, federal litigation under the National Environmental Policy Act (NEPA) shifted its focus from whether the agency's decision was reasonable to whether it was "arbitrary and capricious." In Marsh v. Oregon Natural Resources Council, the Supreme Court explicitly rejected the reasonableness standard and held that as long as an agency's decision not to prepare a supplemental impact statement "was not 'arbitrary or capricious,' it should not be set aside." 490 U.S. 360, 377 & n.23 (1989). In most contexts, federal courts now review an agency's negative threshold determination under the arbitrary and capricious standard. See Daniel R. Mandelker et al., NEPA Law & Litigation § 8:7 (2020 ed.). Neither Applegate nor DOR asks us to revisit our standard of review in light of this federal development.

3

record to determine whether the agency made a "reasonable judgment" that no EIS is needed. Id. This court recognized, however, that an agency need not undertake a preliminary investigation for every single major agency action. We observed that some alleged environmental challenges would be so "patently trivial or frivolous" that an agency may reasonably conclude no preliminary investigation is required to pass them over; searching judicial review in that circumstance would be inappropriate. Id. at 424. We explained that where it is clear that an action will not significantly affect the quality of the human environment, no bona fide challenge is made and an agency may reasonably decide not to conduct any further investigation. Id. at 425.

¶48 DOR has not challenged this framework here, and I accept these basic principles. Nonetheless, it is worth candidly observing that the preliminary investigation requirement is a judicial creation, not a statutory mandate. While the desire for courts to have something to work with is understandable, and perhaps necessary, this judicially-imposed preliminary procedure is a means to review compliance with actual statutory commands, and should be understood in that light.

¶49 This case raises the question of whether a bona fide claim was made, thus requiring a preliminary investigation. In my view, the majority's approach to this requirement is too strict, and insufficiently attentive to the fact that we're a judicially-created step removed from the statutory requirement

itself. Again, WEPA requires an EIS for major actions significantly impacting the environment, not a preliminary investigation into whether an EIS is required.

¶50 This can be seen more clearly when understanding our two points of comparison. A bona fide challenge must credibly allege some difference between the baseline environmental condition before the agency acts and the changed environmental condition after the agency acts. Analyzing identical text in the National Environmental Policy Act (NEPA), the Ninth Circuit aptly explained: "Discretionary agency action that does not alter the status quo does not require an EIS. In other words, an EIS is not required in order to leave nature alone." Pit River Tribe v. U.S. Forest Serv., 469 F.3d 768, 784 (9th Cir. 2006) (cleaned up). One highly regarded treatise elaborated on the point this way:

> In order to determine whether an action is significant, an agency or a court must have a point of comparison or "baseline." A new highway, for example, brings noise and other intrusions into the surrounding environment. If the environmental baseline is unspoiled, the impact of the new highway on the existing environmental baseline can be dramatic. An example of this is a highway in a native forest. If the environmental baseline is degraded, the impact of a new highway will be less severe. An example of this is a highway in an area substantially developed for commercial and industrial uses.

Daniel R. Mandelker et al., NEPA Law & Litigation § 8:38 (2020 ed.). Put simply, a bona fide challenge is one that alleges that the agency action caused some significant change from the environmental baseline, not merely maintained that condition.

5

If it were otherwise, even renumbering an administrative code provision could be enough to trigger WEPA procedures.

¶51 Additionally, as a matter of consistency with the statute, a bona fide challenge should also demonstrate that the agency knew or should have known of the significant environmental effect at the time it considered the major action. Unless the agency is presented the information during the rulemaking process, it may not learn of the alleged effect until long after the rule has been promulgated. WEPA does not require invalidation of already-promulgated rules based on information about the environment that was not known, constructively or otherwise, before the rule was adopted. Therefore, the bona fide challenge requirement should demand credible allegations that the agency knew or should have known of the particular and potentially significant environmental effects alleged in the challenger's complaint.

## II. APPLIED HERE

¶52 In this case, Applegate's complaint references documents found in the rulemaking record, but it nevertheless falls short of stating a bona fide challenge. Even assuming DOR knew of Applegate's allegations during the rulemaking process, these allegations, as articulated in the majority's citation to Applegate's complaint, do not rise to the level where DOR needed to prepare an EIS or even investigate further.

¶53 In ¶206 of its complaint, Applegate points to the difference between DOR's initially proposed rule and the rule

DOR ultimately adopted, noting that the final version excluded certain lands included in the proposed rule (but not the original rule). This makes no reference to the baseline environmental condition, only a proposed rule that was never in effect.

¶54 In ¶207, Applegate alleges that "the exclusion and removal of wetlands in agricultural easements" from the rule "causes farmers to destroy sensitive wetlands." This also compares the amended rule to the proposed rule and not to the baseline environmental condition.

¶55 In ¶208, Applegate alleges that the prior (and possibly current) version of Wis. Admin. Code § Tax 18.05(1) "is causing" environmental harm. This merely alleges a baseline environmental condition, without saying anything about the 2014 rule amendment's effect on that baseline condition.

¶56 In ¶209, Applegate again discusses the baseline environmental condition without identifying a change to it, stating that both the old and amended versions of the rule "result in the further destruction, degradation and loss of wetlands."

¶57 Finally, in ¶210, Applegate alleges that the "exclusion and removal of wetlands conserved in the agricultural easements from agricultural use value has and will continue to have a significant effect." This paragraph seems to undercut any challenge that the rule amendment caused a significant change to the baseline environmental condition because it alleges a continuous effect under both the old and amended

7

versions of the rule. Again, no effort is made to show how the 2014 amendment caused a significant change in the preexisting baseline condition.

¶58 These allegations at most support the proposition that promulgating the old version of Wis. Admin Code § Tax 18.05(1) might have had some significant effect on the environment. And perhaps it did. But promulgation of the old version of § Tax 18.05 is not the challenged action; the 2014 amendment to that rule is. The environmental condition under the old version of § Tax 18.05 is the baseline condition against which the 2014 amendment's effect must be compared. Nowhere does Applegate explain how the 2014 amendment to § Tax 18.05 altered that baseline environmental condition (or for that matter how DOR should have evaluated such an effect). Therefore, I conclude Applegate failed to state a bona fide WEPA challenge.[4]

---

[4] A review of DOR's rulemaking record confirms that DOR reasonably declined to conduct a preliminary investigation into the environmental effect Applegate now alleges. Applegate points us to two studies in the record detailing how the old version of Wis. Admin. Code § Tax 18.05(1) caused property taxes on agricultural wetlands to increase. The first, published on April 11, 2000, explained that the taxation scheme of the former § Tax 18.05(1) incentivized farming rather than preservation of wetlands. The second, prepared by Wisconsin Wetlands Association, listed the percentage of wetlands assessed as agricultural land in five counties, ranging from 38.27 percent to 88.86 percent. From these, Applegate argues that § Tax 18.05(1)'s exclusion of certain lands from favorable tax treatment available for other lands must significantly affect the environment because it incentivizes farming of wetlands rather than enrolling them in certain preservation programs. But as with the allegations in Applegate's complaint, these studies also fall short of stating a bona fide challenge because they do not show that the agency action——the 2014 rule amendment——caused any significant change from the environmental baseline.

### III. CONCLUSION

¶59 I agree with much of the majority opinion. Its conclusion that indirect environmental effects may trigger WEPA's EIS requirement is a correct statement of law. However, Applegate failed to assert a bona fide challenge because it did not compare the effect of the previous version of the rule to the amended rule. Therefore the rule amendment was not promulgated in violation of WEPA.[5]

---

[5] While I need not address the remedy Applegate is entitled to, I nonetheless harbor some skepticism of the majority's decision to remand to the circuit court with directions to remand to DOR to develop a reviewable record. The 2014 amendment to Wis. Admin. Code § Tax 18.05(1) was promulgated——and its rulemaking record closed——more than six years ago. Our statutes explain that once a rule is promulgated, "the exclusive means of judicial review of the validity of a rule . . . shall be by an action for declaratory judgment as to the validity of the rule." Wis. Stat. § 227.40(1) (emphasis added). The Uniform Declaratory Judgments Act defines the scope of our declaratory power "to declare rights, status, and other legal relations." Wis. Stat. § 806.04(1). It's perplexing, therefore, that the majority does not issue a declaration, but instead orders a stay and a remand to DOR. If there is a justification for the majority's approach, it is not presented in the court's opinion or in its citations to authority. So far as I can tell, no court has done what the majority does here.

9

It's also unclear what the majority thinks DOR will accomplish on remand. Ordering development of a reviewable record of a negative-EIS determination made more than six years ago risks impermissible post hoc rationalization of agency action. See Dept. of Homeland Sec. v. Regents of the Univ. of Cal., 140 S. Ct. 1891, 1909 (2020) (noting that justifications provided after the agency has acted "can be viewed only as impermissible post hoc rationalizations and thus are not properly before us"); see also Flung v. LIRC, 2017 WI 72, ¶105, 376 Wis. 2d 571, 898 N.W.2d 91 (A.W. Bradley, J., dissenting) (referring to the rule against post hoc rationalization as "well-established precedent on administrative agency review"). I suspect DOR will simply compile some relevant documents and conclude no EIS was required using largely the reasoning presented to us in briefing. If this is all WEPA requires, so be it. But I find this an odd approach to ensuring an agency made a reasonable determination that no EIS was required years earlier.